W. L. PHILLIPS ET UX V. W. H. NAUMANN ET AL

No. A-4886. Decided February 16, 1955.
(275 S.W. 2d Series 464)

154

*H. G. Kennedy,* of Marble Falls, *James A. Steele,* of Burnet, *Tisinger & Sloan* and *David L. Tisinger,* of Austin, for petitioners.

The Court of Civil Appeals erred in holding that where the primary purpose of a taking is to benefit an individual, a road may nevertheless be opened, even though public importance is not involved. Borden v. Tres-palacios Rice and Irr. Co., 98 Texas, 494, 86 S.W. 11; Marrs v. Railroad Com., 142 Texas 293, 177 S.W. 2d 941; Housing Authority of the City of Dallas v. Higginbotham, 135 Texas 158, 143 S.W. 2d 79.

*Bryce A. Taylor,* of Burnet and *L. Hamilton Lowe,* of Austin, for respondents.

In reply to petitioners' points cited Bradford v. Moseley, 223 S.W. 171; Goodnight v. City of Wellington, 118 Texas 207, 13 S.W. 2d 353; Railroad Com. v. Shell Oil Co., 139 Texas 66, 161 S.W. 2d 1022.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

Upon the petition of respondent W. H. Naumann the Commissioners' Court of Burnet County entered an order for the opening of a public road across the ranch of petitioners W. L. Phillips and wife. This suit was brought by petitioners for an injunction restraining the Commissioners' Court, the individual members thereof, and Naumann from acting under or enforcing or attempting to enforce any order authorizing the opening of a road in response to Naumann's petition. Upon a trial the jury in answer to special issues found: (1) That the Commissioners' Court in ordering the opening of the proposed road "acted primarily for the purpose of benefiting W. H. Naumann," and (2) that such court "did not deem it of any substantial public importance." Upon motion the trial court rendered judgment *non obstante veredicto,* denying petitioners any relief, and its judgment was affirmed by the Court of Civil Appeals. 270 S.W. 2d 266.

The only claimed authority for entering the order is Article 6711, Vernon's Annotated Civil Statutes of Texas, as amended

in 1930. That Article was again amended in 1953, but that amendment will not be considered because this case must be decided as the law existed in 1952, when these proceedings were had. The Article under review reads in part as follows:

"Any lines between different persons or owners of lands, any section line, or any practicable route, that the Commissioners' Court may agree upon, in order to avoid hills, mountains or streams through any and all inclosures, may be declared public highways upon the following conditions:

"1. Ten freeholders, or one or more persons living within an inclosure, who desires a nearer, better or more practicable road to their church, county seat, mill, timber, or water, may make sworn application to the Commissioners' Court for an order establishing such road, designating the lines sought to be opened and the names and residences of the persons or owners to be affected by such proposed road, and stating the fact which show a necessity for such road.

"2. Upon the filing of such application the clerk shall issue a notice reciting the substance thereof directed to the sheriff or any constable of the county, commanding him to summon such land owners, naming them, to appear at the next regular term of the commissioners' court and show cause why said lines should not be declared public highways. Said notice shall be served in the manner and for the length of time provided for the service of citations in civil actions in justice courts, and shall be returned in like manner as such citation.

"3. At a regular term of the court, after due service of such notice, if the commissioners' court deems said road of sufficient public importance, it may issue an order declaring the lines designated in the application, or the lines fixed by the commissioners' court, to be public highways * * *."

Naumann originally owned a tract of 272.25 acres of land upon which he resided. At that time he had access to a road leading from his land to the Kingsland-Marble Falls public road. That road was not over the Phillips ranch. Lower Colorado River Authority (LCRA) determined that the lake to be created by its erection of Granite Shoals Dam in Burnet County would inundate a part of Naumann's land. The Authority did not file condemnation procedings, but acquired by deed all of Naumann's land, except 31.8 acres. The house occupied by Naumann was located on that portion of his land deeded to LCRA, but he moved it to the 31.8-acre tract which he retained and where he and Mrs. Naumann now live. After the dam was con-

structed the water from the lake inundated a segment of the road over which Naumann had theretofore traveled in reaching the Kingsland-Marble Falls public road. In his application to the Commissioners' Court for the opening of a public road across petitioners' ranch Naumann alleged "That said inundation of petitioner's sole and only means of ingress and egress is creating a grave and dire necessity that there be opened a better and more practicable road to furnish your petitioner ingress and egress from his property to his church and to the county seat of Burnet County, Texas, which such ingress and egress it is absolutely necessary that he have in order to continue his residence and livlihood on said tract of land."

■ In order for the Commissioners' Court to have the authority to order the opening of the public road under the Article under review the petition must state "the facts which show a necessity for such road" and that authority may be exercised only if the Commissioners' Court "deems said road of sufficient public importance." The facts showing a necessity for such road must not only be alleged but must be established by the evidence.

■ For the purposes of this decision we will assume that it is of public importance that every citizen has a way to and from his residence, and that, as stated by the Court of Civil Appeals, an obligation rests upon the state to afford each family "a reasonable means of enjoying the privileges and discharging the duties of a citizen." We will further assume that, if the facts had disclosed that Naumann's sole and only means of ingress and egress had been cut off by the inundation, the Commissioners' Court would have had authority to enter the order under attack or some similar order, but the facts disclose that prior to the time that a segment of the old road was inundated petitioners gave permission for him and his family, as well as their visitors, to travel over a road across petitioners' property. Naumann has used that road continuously since that time. With regard to whether or not that road is adequate for his needs he, himself, testified as follows:

"Q. Actually, isn't it fair to say that the road that you are now using on Mr. Phillips' property is more passable in bad feather and is generally a better road than the road you had over on the Ebeling tract?

"A. Yes, sir.

"Q. It is better?

"A. Yes, sir.

"Q. That's all I want. Now then, why didn't you tell your lawyer that you would just like to have the better road you are now using on Mr. Phillips' property?

"A. Mr. Phillips didn't want me to use a road by his house at the start.

"Q. Is that the reason?

"A. That's the reason, I guess, we moved over there away from his house."

That evidence completely negative the fact that there was a necessity for opening a public road across petitioners' ranch. The question of whether the Commissioners' Court would have the authority to open a road across petitioners' ranch should they withdraw their consent to Naumann's using the present road across same is not before us. We do not, therefore, pass upon the question of whether Naumann would have the right to have a road condemned across petitioners' ranch in the event there should arise a necessity therefor. What we hold is that, since Naumann already had a way out from his land and since the evidence does not show that a new location of the way was necessary "in order to avoid hills, mountains and streams," no necessity existed for the opening of another road across petitioners' ranch, and the Commissioners' Court was, therefore, without authority to do so.

■ A further requisite to the authority of the Commissioners' Court to open the questioned road is that the court deemed it of "sufficient public importance." As noted above, the jury found that the Commissioners' Court acted primarily for the purpose of benefiting Naumann, and that it did not deem the opening of the road of any substantial public importance. It could not have answered otherwise. The undisputed evidence discloses that the only persons who could be benefited by the opening of this road are the Naumanns and persons who might desire to visit them. The principle that private property cannot be taken for a private use is too elementary to call for a citation of authorities in support thereof. What this record discloses is the taking of private property of petitioners for the use of Naumann, and for no other use, and that, too, when there is no necessity for doing so. In their reply brief respondents quote at considerable length from the testimony of one of the County Commissioners which, it is claimed, discloses that the road would serve a public purpose. That testimony was in substance that naturally the opening of the road would be of more importance to Mr. Nau-

mann than any other person, but there were other considerations; that witness talked to many people and it seemed that they would like to see the road opened; that various business people of both towns of Burnet and Marble Falls were very much interested in keping all roads open to the lake which they possibly could; that witness thought the recreational facilities of Burnet County were about its biggest assets; and that a major consideration in the administration of the County's affairs is to provide access to the lakes.

■ Even if the opening of a road to a lake would be for a public purpose, that purpose would not be served by opening the road in question, for the reason that it would not extend to the lake. It would come to an end at Naumann's property line. But the authority to open a public road in order to furnish access to a lake is not conferred by Article 6711. By Article 6711a the Legislature has seen fit to authorize the Commissioners' Court to open roads to furnish access to public streams, lakes and bays in the Counties of Leon and Madison, but that authority was not conferred on the Commissioners' Court of any other county.

While on the witness stand Naumann was asked whether, if the road in question was finally opened as a public road, he proposed to put in "any fishing camp or commercial development of any kind," to which he replied "I have never decided whether a fishing camp or not." If this order of the Commissioners' Court is upheld the effect would be to place Naumann in a position where he could open up a fishing camp or some other commercial development on his land and have a highway leading thereto by consenting to the public's crossing over his tract of land. It does not lie within the power of the Commissioners' Court to condemn a highway across petitioners' ranch in order to enable Naumann to establish a fishing camp or other commercial enterprise on his land. To do so would be taking private property for a private purpose.

Several other important questions are discussed in the application for writ of error, but under our views above expressed, it becomes unnecessary to consider or decide them.

The judgments of both courts below are reversed, and judgment is here rendered decreeing the invalidity of the order of the Commissioners' Court under attack and enjoining further procedings thereunder.

Opinion delivered February 16, 1955.