**AFFIRMED; Opinion Filed July 19, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00402-CV

**KMS RETAIL ROWLETT, LP F/K/A
KMS RETAIL HUNTSVILLE, LP, Appellant
V.
THE CITY OF ROWLETT, TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-15-01323-D**

## MEMORANDUM OPINION

Before Justices Evans, Stoddart, and Boatright
Opinion by Justice Evans

KMS Retail Rowlett, LP, f/k/a KMS Retail Huntsville, LP appeals the trial court's adverse rulings on cross-motions for summary judgment resulting in a final judgment awarding KMS stipulated damages of $31,662 for the City of Rowlett's taking in fee simple of its private drainage, access, and utility easement (private road easement) for use as a public roadway. In three issues, KMS generally asserts the summary judgment evidence conclusively establishes, or creates a fact issue as to whether, the City's taking was for a private use, specifically, to provide an economic benefit to a competing developer. KMS also challenges the trial court's evidentiary rulings on its objections to the City's summary judgment evidence and the denial of its request for attorney's fees. For the reasons set forth below, we affirm the trial court's judgment.

BACKGROUND

Central to this appeal is the validity of the City's taking of KMS's private road easement to convert it to a public roadway. At the location of this dispute, a Wal-Mart Supercenter is located to the west of KMS's tract of land separated only by Kenwood Drive that generally runs north-south. East of KMS's tract is land owned by Briarwood Armstrong, LLC on which a Sprouts grocery store later was developed. The private road easement the City condemned generally runs east-west parallel to Lakeview Parkway. Lakeview Parkway is on the southern border of the Wal-Mart and Briarwood tracts. The private road easement connects at approximately the mid-point of Briarwood's tract to Kenwood Drive immediately across from an entrance to approximately the mid-point of Wal-Mart.

KMS's undeveloped nine-acre tract is accessible from Kenwood Drive and is part of a commercial subdivision named Luke's Landing. The condemned private road easement is located on KMS's tract's southern boundary. KMS built a private road on the easement in 2006 in conjunction with KMS's sale of four commercial pad sites located on the southern edge of the private road easement. The southern boundary of those four commercial tracts is Lakeview Parkway. By the time of the condemnation proceeding, those four tracts had been developed into a Wells Fargo bank, Starbucks coffee shop, Chick-fil-A restaurant, and an Arby's restaurant. Along Lakeview Parkway, Wal-Mart is west and Briarwood's tract is east of those four retail businesses.

KMS did not complete construction of the private road all the way to end of the easement on the eastern edge of its subdivision in accordance with the easement in the Luke's Landing's recorded plat. Instead, KMS constructed the private road only to the fourth pad site. To complete the private road to the end of the easement, KMS would have had to construct a bridge across a flood plain. At the time the private road was constructed, however, the tract to the east

of KMS's tract was undeveloped so the City allowed the development of the four pad sites without requiring completion of the private road.

Briarwood owns the twelve-acre tract abutting the east side of the KMS tract. In 2014, Briarwood entered into an Economic Development Incentive Agreement with the City in connection with Briarwood's development of a Sprouts grocery store and other retail lots on its twelve-acre tract. Among other things, the agreement provided for an infrastructure grant to Briarwood for the design, construction, improvement and installation of a private circulation drive and drainage culvert providing for cross-access between its tract and the KMS tract. After Briarwood learned that it did not have legal authority to enter Luke's Landing to construct the drive and drainage culvert, however, it approached KMS for permission. The parties were unable to reach an agreement. The City then sought to condemn the part of the private road easement on KMS's tract and convert it into a public roadway that would allow vehicles to travel from Kenwood Drive across KMS's tract to reach the Briarwood tract and vice versa.[1] The City's economic incentive agreement with Briarwood was amended to reduce Briarwood's grant amount for the off-site culvert crossing to reflect the condemnation costs incurred by the City to convert the private road easement into a public street. Notably, the City sought to condemn only the boundaries of KMS's existing private road easement, approximately a fifteen foot strip of land 691 feet in length, plus a thirty foot wide drainage swale crossing.[2]

After the City filed its condemnation petition, special commissioners conducted a hearing and awarded KMS damages of $31,662 for the taking. KMS filed an answer objecting to the award and moving to dismiss the eminent domain action, generally alleging the taking was not

---

[1] Absent the condemnation, vehicles on the Briarwood tract would not be able to access Kenwood Drive via the KMS tract, but would have to exit onto Lakeview Parkway and travel west to Kenwood Drive.

[2] Including voluntary transfers from the four, abutting property owners to the south, the total area consisted of a thirty-foot wide strip.

necessary for a public use and asserting the City's determinations of necessity and public use were fraudulent, in bad faith, or arbitrary and capricious.

The parties filed competing motions for summary judgment regarding the propriety of the City's exercise of eminent domain. In its motion, the City requested the trial court deny KMS's illegal taking claims, confirm the special commissioners' damage award, and award the City reasonable attorney's fees. KMS moved for summary judgment seeking dismissal of the City's eminent domain petition asserting the taking was not necessary for a public use and violated chapter 2206 of the government code. It also asserted the City's determinations of public use and necessity were fraudulent, in bad faith, and arbitrary and capricious. The trial court granted in part the City's summary judgment motion and denied KMS's motion in its entirety, dismissing with prejudice KMS's claims related to the alleged illegality of the taking and alleged fraud, bad faith, and arbitrariness. These rulings were incorporated into a final judgment in the City's favor awarding KMS stipulated damages of $31,662.00 which was deposited into the registry of the court.[3] This appeal followed.

## ANALYSIS

### A. Standard of Review

We review a trial court's summary judgment rulings de novo. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Both parties moved for summary judgment on traditional and no-evidence grounds. On their traditional summary judgments, each bears the burden of establishing that there are no issues of material fact and it is entitled to judgment as a matter of law. *See City of Garland v. The Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). With respect to the no-evidence motions for summary judgment, the non-movant must

---

[3] The parties agreed that the amount of the monetary judgment would not be appealed by either party, but the damages stipulation did not waive or affect KMS's right to appeal the issues addressed in the summary judgment rulings.

produce more than a scintilla of evidence to raise a fact issue on each challenged element of a claim on which it had the burden of proof. *See Gen. Mills Rests., Inc., v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.). When both parties move for summary judgment and the trial court grants one party's motion for summary judgment and denies the other party's motion, we can consider both motions, review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Malcomson Road Util. Dist. v. Newsom*, 171 S.W.3d 257, 263 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (op. on reh'g).

### B. Objections to the City's summary judgment evidence

In its fifth issue, KMS contends that the trial court erred in overruling its objections to the affidavit of James Edward Grabenhorst, the City's Director of Economic Development.[4] KMS argues that the affidavit was the only evidence to support the City's contention that the taking was necessary for a public use, specifically, to alleviate traffic congestion and traffic hazards.

A trial court's evidentiary rulings are matters left to its sound discretion and will not be disturbed on appeal unless an abuse of discretion is shown. *See Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.). Moreover, we may not reverse for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1; *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 230 (Tex. 1990). Here, the summary judgment evidence included the following evidence to which there was no objection: (1) the City's formal resolution indicating the taking was for creation of a public street; (2) the City's staff report indicating (a) the public street would provide access from Kenwood Drive

---

[4] Although KMS identifies this as Issue V, we note that KMS's "Issues Presented" does not contain a fourth issue and identifies a total of five issues.

across the drainage channel to the Briarwood tract, (b) the drive approach would provide circulation between retail locations on the north side of Lakewood Parkway, facilitating retail activity and preventing an increase in traffic flow on Lakeview Parkway, and (c) the public street is necessary for emergency vehicle access and first responder service; and (3) statements in Grabenhorst's affidavit indicating the acquisition of the property in this case was needed for cross-access and traffic circulation between retail centers that were traffic generators. Because the statements in Grabenhorst's affidavit regarding traffic impact and emergency response vehicles that KMS objected to are substantiated by other unobjected to summary judgment evidence, any error with respect to the trial court's overruling of KMS's objections is harmless. We resolve this issue against KMS.[5]

## C. Public Use and Necessity

In its first issue, KMS argues that the trial court erred in granting the City's summary judgment motion because the summary judgment evidence conclusively established the City's condemnation of KMS's access drive was not necessary for a public use but rather, "to provide access to a private road over KMS's property for the sole benefit of its neighbor Briarwood." Alternatively, KMS asserts there were fact issues regarding whether the taking was necessary for a public use.

The Texas constitution and the local government code authorize municipalities to take private property when they determine the property is necessary for a public use and provide just compensation to the property owner. *See City of Austin v. Whittington*, 384 S.W.3d 766, 772 (Tex. 2012). Among other things, to establish a valid exercise of eminent domain, a

---

[5] Likewise, the City complains in its brief about the trial court's ruling sustaining KMS's objections to seven statements in the Grabenhorst affidavit. The City contends, however, it was entitled to summary judgment without these statements. In absence of any argument that these evidentiary rulings probably resulted in rendition of an improper judgment, we decline to address the merits of the City's evidentiary complaints. *See* TEX. R. APP. P. 44.1.

municipality must show it intends to put the property to public use and the condemnation is necessary to advance or achieve that public use. *See Whittington*, 384 S.W.3d at 772. Property is taken for public use only when there results to the public some definite right or use in the undertaking to which the property is devoted. *See Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 833 (Tex. 1958). So long as the use is open to all, however, it is irrelevant the number of citizens likely to avail themselves of the use or that the use is limited to the citizens of a local neighborhood. *See Whittington*, 384 S.W.3d at 779 (quoting *Hous. Auth. of City of Dallas v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940)). Moreover, the mere fact that a particular individual, group or enterprise may benefit will not deprive the use of its public character. *See Higginbotham*, 143 S.W.2d 84. Where the power of eminent domain is granted, a determination by the condemnor that the taking is necessary for a public use is conclusive absent proof by the landowner that the public use or necessity determinations were fraudulent, in bad faith, or arbitrary and capricious. *See Whittington,* 384 S.W.3d at 777. We review the summary judgment evidence bearing in mind the supreme court's observation, "Where a statute vests a governmental agency with discretionary authority to condemn property, we have held that the agency's determination of public necessity is presumptively correct, absent proof by the landowner of the agency's fraud or proof that the condemning authority acted arbitrarily or capriciously. *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 629 (Tex. 2008) (citing *Higginbotham*, 143 S.W.2d at 88).

Here, the City passed a formal resolution that "a public necessity exists for the welfare of the City and its citizens and it is in the public interest" to acquire KMS's private road easement "for the public purpose of acquiring right of way for construction, maintenance and operation of a public street." Moreover, according to a City staff report from January 2015, the condemnation would permit Briarwood to construct a roadway on the private road easement that would be a

"city street and [serve] a public purpose by providing access from Kenwood Drive across the drainage channel to the Briarwood tract." The report further provides a public street in the easement would "provide circulation between retail locations on the north side of Lakeview Parkway which will facilitate retail activity and will prevent increased traffic flow on Lakeview Parkway" when the Briarwood tract is developed. The staff report also indicated the drive approach "is needed for emergency vehicle access and first responder service." Finally, the report stated when completed, the drive would allow vehicles to access the Briarwood tract from Kenwood Drive (and Kenwood Drive from the Briarwood tract) without traversing Lakeview Parkway. At his deposition, James Grabenhorst, the City's Director of Economic Development, testified that the taking was necessary to ensure cross-access between adjoining property owners.

Traffic circulation and cross-access between retail areas is a public purpose. Section 77-505(E)(2)(c) of the City Code provides, "Where new development is adjacent to land likely to be developed or redeveloped in the future, all streets, bicycle paths, and access ways in the development's proposed street system shall continue through to the boundary lines of the area, as determined by the director of planning, to provide for the orderly subdivision of such adjacent land or the transportation and access needs of the community." ROWLETT, TEX., CODE § 77-505(E)(2)(c). In addition, section 77-505(E)(2)(e)(1) provides every proposed public or private street system shall be designed to provide vehicular interconnections to all similar or compatible adjacent uses complying with the standards of subchapter 77-505F, Access management and driveway standards. ROWLETT, TEX., CODE §77-505(E)(2)(e)(1).

KMS asserts that transforming its private road easement into a "City-owned" roadway does not meet the necessity for public use requirements because the taking economically benefits Briarwood and the condemnation was pursuant to the economic incentive agreement between Briarwood and the City. Specifically, KMS argues that Briarwood and the Sprouts grocery store

–8–

desired access to Kenwood Drive so that it could take advantage of the large amount of customer traffic from the Wal-Mart store KMS developed adjacent to and immediately to the west of Kenwood drive. KMS further contends the City condemned its private road easement to ensure the Sprouts grocery store was developed. As such, KMS argues the City's asserted public use is nothing more than public welfare or good and under which almost any kind of business which promotes the prosperity or comfort of the community which has been rejected by the supreme court. *See Pate*, 309 S.W.2d at 833 (stating general proposition but concluding condemnation of easement for slant-drilling site to extract oil and gas one-fourth of gross production being reserved to the State was for a public purpose). KMS also argues that the condemnation was not necessary for public safety reasons because Briarwood had four access connections to major thoroughfares and the development project was completed and the grocery store was allowed to open without a connection to Kenwood Drive.

KMS's arguments do not challenge, and there is no evidence in this record, that a public street in the easement would not provide circulation between retail locations on the north side of Lakeview Parkway, would not facilitate retail activity, and would not reduce increased traffic flow on Lakeview Parkway—all matters in the City staff report on which the City's resolution was based. KMS's argument as to the City staff's reported need for emergency vehicle access and first responder service to have access over the private road easement was challenged only to the extent of KMS's argument that there were other (more circuitous) means of access between Kenwood Drive and Briarwood's tract or between Wal-Mart and Briarwood's tract. Instead, the City by formal resolution determined "a public necessity exists" for acquiring KMS's private road easement "for the public purpose of acquiring right of way for construction, maintenance and operation of a public street." This resolution was based on the City staff's report. We conclude the City established as a matter of law that the taking was necessary for a public use to

provide cross-access, traffic circulation, and emergency vehicle access between retail centers that are traffic generators. The public street in that location would prevent an increase in traffic flow on Lakeview Parkway and would allow vehicles to travel back and forth from the Briarwood tract to Kenwood Drive without traversing Lakeview Parkway. Although the decision to convert KMS's private road easement to a public street may benefit Briarwood and the grocery store, it also benefits all the retail businesses that abut the private road easement as well as the retail establishments on Kenwood Drive. Moreover, it is immaterial whether the City wanted the public roadway to assist the development of the Briarwood tract so long as the public could benefit from or use the improvements and the improvements were not clearly and palpably private. *See Newsom*, 171 S.W.3d at 267.

In reaching our conclusion, we reject KMS's reliance on *Phillips v. Naumann*, 275 S.W.2d 464 (Tex. 1955) and *Maher v. Lasater*, 354 S.W.2d 923 (Tex. 1962). In both of these cases, the condemning authority attempted to convert existing private roads to public roads solely for the private benefit of abutting property owners. *Phillips,* 275 S.W.2d at 467 ("What this record discloses is the taking of private property of petitioners for the use of [abutting landowner], and for no other use, and that, too, when there is no necessity for doing so."); *Maher* 354 S.W.2d at 925–26 (by statute government was "authorized to declare a private roadway to be a public highway if applicants therefor wish it to be done and 'have no means of access to their lands and premises.' In so far as the amendment seeks to authorize the taking of private property for private use, it is unconstitutional and void."). These cases stand for the rather unremarkable proposition that "private property cannot be taken for a private use." *Phillips*, 275 S.W.2d at 467; *see also Maher*, 354 S.W.2d at 925–26. As detailed above however, the evidence before us indicates that the City's taking here was for a public purpose, namely cross-access, traffic circulation, and emergency vehicle access between retail centers that are traffic generators.

Based on the record before us, we conclude the summary judgment evidence established the City's condemnation of the access road was necessary for a public use. Accordingly, to reverse the trial court's summary judgment, KMS must have presented evidence that, at the very least, created a fact issue as to whether the City's determinations of public use and necessity were fraudulent, in bad faith, or arbitrary and capricious. *See Whittington*, 384 S.W.3d 777–78.[6]

**D.      Fraud, bad faith, and/or arbitrary and capricious**

In its third issue, KMS contends the summary judgment evidence establishes conclusively or creates a fact issue as to whether the City's determinations of necessity and public use were fraudulent, in bad faith and/or arbitrary and capricious. We will analyze here KMS's arguments regarding fraud and arbitrary or capricious conduct by the City.[7]

*1. Fraud*

KMS argues the City's determination of necessity and public use was fraudulent because the City's purported public use was actually a pretext to confer a private economic benefit on Briarwood. Specifically, KMS relies on evidence that the Sprouts grocery store and Briarwood agreed to either (1) a lease termination or (2) a 4.53 percent reduction in the grocery store's base rent if the City had not approved condemnation of the private road easement before June 1, 2015. Fraud in this context means "'any act, omission or concealment, which involved a breach of legal duty, trust or confidence, justly reposed and is injurious to another, or by which an undue and unconscientious advantage is taken of another.'" *Newsom*, 171 S.W.3d at 269 (quoting

---

[6] To the extent KMS appears to suggest the City has the burden to produce more than a scintilla of evidence that the taking is not fraudulent, in bad faith, or arbitrary and capricious, *Whittington* indicates these are affirmative defenses on which KMS bears the burden of proof. *See Whittington*, 384 S.W.3d at 777–78.

[7] KMS argues the taking was in bad faith because it was plainly for economic development purposes in violation of section 2206.001(b)(3) of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 2206.001(b)(3) (West 2016). In relevant part, subsection (b)(3) provides a governmental entity may not take private property by eminent domain if the taking "is for economic development purposes." *See id.* Because section 2206.001(b)(3) is the only argument KMS makes with respect to bad faith, we will address this argument in our analysis of KMS's second issue in which KMS asserts the taking was prohibited subsection(b)(3) and the three other subsections of 2206.001(b).

*Wagoner v. City of Arlington*, 345 S.W.2d 759, 763 (Tex. Civ. App.—Fort Worth 1961, writ ref'd n.r.e.)). Thus even though the evidence KMS uses to argue that Briarwood might sustain some economic harm in the absence of the condemnation, KMS does not provide any evidence that the City did any act or omission involving breach of a legal duty, trust, or confidence or which unduly or unconscionably took advantage of KMS other than make a determination of necessity and public use with which KMS disagrees. In short, KMS's evidence does not suggest the City's public use and necessity determination was a pretext for Briarwood's private use of the private road easement.

### 2. Arbitrary or Capricious

KMS also contends the City's determination of necessity and public use was arbitrary and capricious. Specifically, KMS argues the City abdicated to Briarwood its discretion to condemn because it was only after Briarwood discovered it had no legal right to enter KMS's private road easement to construct the offsite culvert crossing, thereby allowing vehicles from Kenwood Drive to reach its tract, that the City determined to condemn the private road easement. KMS also relies on evidence that (1) Briarwood engaged and paid its engineers to conduct the survey and prepare the exhibits for the City's condemnation petition and (2) the agreement between the City and Briarwood provided they would share the costs of the condemnation.

For purposes of a condemnation proceeding, arbitrary and capricious means willful and unreasoning action or action absent consideration and disregarding the facts and circumstances. *Newsom*, 171 S.W.3d at 269. Accordingly, to show the City acted arbitrarily and capriciously, KMS had to negate any reasonable basis for determining what and how much land to condemn for the cross-access. *See id*. As discussed in the previous section, KMS did not negate the City staff's determination that a public street in the easement would provide circulation between retail locations on the north side of Lakeview Parkway, facilitate retail activity, and reduce increased

–12–

traffic flow on Lakeview Parkway. Instead, KMS asserts that like the utility district in *Newsom*, the City acted arbitrarily and capriciously by abdicating its decision on the need to condemn to a private developer. *See id.* at 257. But unlike *Newsom*, here the condemned property was already recorded as a private easement on the Luke's Landing plat. While the recorded easement spanned the entire width of KMS's subdivision, however, the private road was only partially constructed. And there is no evidence suggesting that Briarwood determined what and how much of KMS's land to condemn. The location of the public street was simply superimposed upon the platted private road easement.

KMS, however, points to evidence that Briarwood paid the engineering firm that prepared the exhibits to the City's condemnation petition and that Briarwood and the City jointly funded the construction of the drainage culvert. Moreover, the parties agreed the City's funding obligation could be reduced up to $62,750 to reflect right of way acquisition costs. Moreover the decision to condemn was made only after Briarwood was unable to negotiate an agreement with KMS for access to its private drive. KMS does not cite any authority that concludes a government's determination of public necessity and use was arbitrary and capricious merely because the costs of condemnation and construction of a public roadway were partially borne by a private party. *Newsom* does not support that proposition, because there the private parties paid the entire cost of acquisition and construction, chose the property to be condemned, and indemnified the governmental authority from liability for condemning the property thereby removing the governmental entity's discretion in the matter. *See Newsom*, 171 S.W.3d at 274.[8]

For these reasons, we conclude that the City's determination of necessity and public use was not fraudulent or arbitrary and capricious.

---

[8] The *Newsom* court was particularly troubled by the indemnification provision in the private parties' agreement with the governmental condemning authority as removing the government's obligation to exercise its condemning authority properly. *See Newsom*, 171 S.W.3d at 275.

### E. Government Code Section 2206.001

In its second issue, KMS argues the City's taking violates section 2206.001 of the government code. That section provides in relevant part:

> (b) A governmental or private entity may not take private property through the use of eminent domain if the taking:
>
> (1) confers a private benefit on a particular private party through the use of the property;
>
> (2) is for a public use that is merely a pretext to confer a private benefit on a particular private party;
>
> (3) is for economic development purposes, . . . ; or
>
> (4) is not for a public use.

TEX. GOV'T CODE ANN. § 2206.001(b) (West 2016).

KMS contends that the City's taking in this case violates all four of the above provisions making the same arguments and citing much the same evidence it presented with respect to its first and third issues. The City counters that the taking was for a public road which is a statutory exception to section 2206.001(b)'s prohibitions on takings. *See* TEX. GOV'T CODE ANN. § 2206.001(c)(1).[9] Subsection (c) provides in part, "[t]his section does not affect the authority of an entity authorized by law to take private property through the use of eminent domain for: (1) transportation projects, including, but not limited to, railroads, airports, or public roads or highways." TEX. GOV'T CODE ANN. § 2206.001(c)(1). In *Whittington*, the supreme court acknowledged the prohibitions of section 2206.001(b) would not invalidate a taking for a purpose that falls within one of the statutory exceptions listed in section 2206.001(c). *Whittington*, 384 S.W.3d at 791. In the case before us, KMS presented no evidence or argument

---

[9] On appeal, the City also contends the statutory exceptions of 2206.001(c)(3) (flood control and drainage projects) and 2206.001(c)(5) (provision of utility services) also apply. These exceptions were not presented to the trial court as a ground in the City's motion or in its response to KMS's motion and we may not consider them here as a basis for affirming the trial court's summary judgment. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex. 1993) (summary judgment cannot be affirmed on grounds not expressly set out in motion or response).

–14–

that the City's taking did not constitute a transportation project. Instead it argues that it is not a "legitimate transportation project" and subsection 2206.001(c) does not apply here because the City's taking exceeds the limitations set forth in subsection 2206.001(b). "A court may not ... add words that are not implicitly contained in the language of the statute[,]" *Lee v. City of Houston*, 807 S.W.2d 290, 294–95 (Tex. 1991), especially where doing so "judicially amend[s] the statute to add an exception not implicitly contained in the language of the statute." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 867 (Tex. 1999). KMS does not argue there is any language in section 2206.001 on which to add an exception to the application of subsection (c) if a transportation project is illegitimate or a requirement of legitimacy. We are unpersuaded by KMS's contention and conclude its argument is contrary to supreme court's analysis in *Whittington* of these sections. We therefore resolve KMS's second issue against it.

### F.  Attorney's Fees

In its last issue, KMS argues it is entitled to recover its attorney's fees through trial pursuant to property code section 21.019(c). That section allows the recovery of a property owner's attorney's fees when the trial court dismisses a condemnation proceeding or otherwise renders a judgment denying the right to condemn. *See* TEX. PROP. CODE ANN. § 21.019(c) (West 2014). Because we affirm the trial court's grant of summary judgment in favor of the City, we need not address this issue.

### CONCLUSION

Based on the record before us, we affirm the trial court's summary judgment.

160402F.P05

/David W. Evans/
DAVID EVANS
JUSTICE

–15–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KMS RETAIL ROWLETT, LP F/K/A KMS
RETAIL HUNTSVILLE, LP, Appellant

No. 05-16-00402-CV      V.

THE CITY OF ROWLETT, TEXAS,
Appellee

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-15-01323-D
Opinion delivered by Justice Evans, Justices
Stoddart and Boatright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee The City of Rowlett, Texas recover its costs of this appeal
from appellant KMS Retail Rowlett, LP F/K/A KMS Retail Huntsville, LP.

Judgment entered this 19th day of July, 2017.