**AFFIRM; Opinion Filed November 12, 2024**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-24-00024-CV

## IN THE INTEREST OF S.M.Q., A CHILD

**On Appeal from the 303rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-17-16989**

## MEMORANDUM OPINION

Before Justices Molberg, Breedlove, and Kennedy
Opinion by Justice Kennedy

Father appeals the trial court's order denying his petition to modify conservatorship and granting Mother's counterpetition to modify conservatorship of their child, S.M.Q. In five issues, Father urges the trial court abused its discretion in admitting Mother's expert's treatment summary and the business records affidavit authenticating it and in relying on it to deny his petition and to grant Mother's petition. In his sixth issue, Father complains that the trial judge's order conflicts with certain of the trial judge's findings of fact. We affirm. Because all dispositive issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.2(a), 47.4.

## BACKGROUND

Father and Mother divorced in 2015 in another state and entered into an agreed order in 2016 to transfer the case to Texas.

In 2017, Father petitioned to modify the 2015 Judgment of Dissolution of Marriage, which awarded sole custody of the child to Mother and ordered Father to make support payments to Mother. In his petition, Father sought (1) the exclusive right to designate primary residence of the child, (2) possession and custody of the child pursuant to an expanded standard possession schedule, and (3) an order that Mother bear increased costs arising from her change of residence. Mother filed an answer generally denying Father's allegations and a counterpetition, in which she, among other things, sought confirmation of her role as sole managing conservator of the child, alleged Father had a history and pattern of family violence and child abuse, and requested an order that Father take anger management classes and that all communication between the parties take place using a specific internet platform, www.ourfamilywizard.com.[1]

In 2020, the trial judge signed an order in the suit to modify the parent–child relationship, in which the trial judge found the material allegations in Mother's

---

[1] In 2019, Mother modified her counterpetition to request that Father continue on the access schedule set by temporary orders of two hours each Wednesday and five hours each Sunday "and that if he continues to refrain from any abusive language or behavior that he be stair-stepped to a standard access and remain as a possessory conservator." The amended counterpetition also requested permanent injunctions against Father from using vulgar, profane, obscene, or indecent language with Mother, threatening her, speaking about her disparagingly to the child, or communicating with her outside of the site www.ourfamilywizard.com.

petition to be true and that the requested modification was in the best interest of the child. The 2020 order stated the judge appointed Mother sole managing conservator and Father possessory conservator of the child and set forth a possession schedule that set forth three "steps" of Father's possession of the child as follows:

a. Step 1. Beginning February 27, 2020 on the 1st and 3rd Saturdays of each month beginning at 12:00 Noon and ending at 5:00 PM that same day (5 hours) until May 25, 2020 (three months);

b. Step 2. Beginning May 26, 2020 on the 1st and 3rd Saturdays of each month beginning at 9:00 AM and ending at 6:00 PM (9 hours) that same day until November 26, 2020 (six months);

c. Step 3. Beginning November 27, 2020 on the 1st and 3rd Weekends of each month beginning at 9:00 AM on Saturday and ending at 6:00 PM the following day on Sunday.

That order also specified, "If [Father] displays, engages in verbally or emotionally abusive behavior towards [Mother or Child], which includes but is not limited to bad mouthing [Mother] or the [Mother's] family in front of the child, then [Father's] visitation with the child is changed and immediately and reverts back to a. through c., as outlined above." Another condition of Father's access and possession was that Mother "shall continue to take [the child] to therapy with Dr. Estrada until he is able to cope with the situation with [Father] or until the therapist or [Mother] feels therapy was adequate" and that "Father [] visit therapist with [the child] if requested by the mother or his therapist."

In May of 2022, Father filed another petition to modify the parent–child relationship, in which he stated material and substantive changes had occurred since

the 2020 order was entered and requested that he be granted a standard possession order regarding the child. In August of 2022, Mother answered, generally denying Father's allegations, and filed a counterpetition in which she alleged Father had not abided by and had violated the terms and conditions of the 2020 order on which his access to the child was predicated.

In May of 2023, the trial judge signed a pretrial order, setting the case for a bench trial on October 12, 2023. On October 9, Father moved to strike the business records affidavit of Mother's expert Dr. Karina Sameniego Estrada as untimely because Mother did not serve her initial disclosures or disclose Dr. Estrada as an expert witness until September 12, 2023, one month before trial, such that Father urged the affidavit should be struck as untimely. *See* TEX. R. CIV. P. 195.2 (requiring parties to designate experts no later than sixty days before the end of the discovery period); 190.3 (providing discovery period in suit governed by family code ends thirty days before date set for trial). Mother responded that the failure to timely designate should be excused under Texas Rule of Civil Procedure 193.6 for good cause because Father had not served his required initial disclosures until October 9, 2023, three days prior to trial, such that Mother was prevented from properly defending against his petition and such that Father could not be unfairly surprised or prejudiced. Mother alternatively argued Dr. Estrada was a rebuttal expert and thus excused from disclosure by the deadline Father complained of. Finally, Mother argued the central issue of the case was Father's behavior towards the child and that

–4–

allowing the child's therapist to testify, whether as a direct or rebuttal witness, "about the father's continued multi-year abusive behavior" would not surprise or prejudice Father in any way.

Prior to trial, the trial judge conducted a hearing on Father's motion to strike and signed an order that granted the motion to strike the affidavit, "subject to being entered as rebuttal evidence." The one-day bench trial proceeded with testimony from Father and Mother.

Father testified he had had positive and fun visits with the child, during which they would play sports and discuss religion and spend time with Father's parents who live with him. Father testified he had become a better father and a more mature parent since the last order was entered and that he had been taking parenting counseling classes even after he was released from a requirement to continue them. According to Father, Dr. Estrada reported to child protective services and adult protective services with allegations Father was abusive to his parents, which Father testified lacked any merit. Father also testified his visits with the child had been going great, the child enjoyed his time with him, did not display any emotional trauma or difficulties, he had done nothing to cause any of the child's emotional trauma or difficulties, had not said or done anything to the child that would cause him to be upset, and had never displayed or engaged in verbally or emotionally abusive behavior towards the child. According to Father, although he had provided his own counsel with paperwork to support his claims he had participated in therapy

and parenting classes, he was unable to recall any specific names of classes or therapists he had seen.

Mother offered Dr. Estrada's treatment summary as rebuttal evidence, and the trial court admitted it as such over Father's objections to the document as hearsay, untimely designation of expert, and lack of foundation and expert's qualifications.

Mother testified her understanding was the 2020 order conditioned Father's access to and visitation with the child on Father's not displaying any further emotional abuse and that that abuse had continued in spite of the order. On direct examination, Mother confirmed the content of Dr. Estrada's treatment summary report and denied conspiring with her to alienate the child against Father. According to Mother, the behavior prohibited by the 2020 order had worsened and warranted a more restrictive schedule and protections to be put in place to protect the child, in particular supervised visitation. On cross-examination, Mother testified that Dr. Estrada had seen the child approximately thirty times and that the doctor had told her the child reported the Father using very harsh language towards the child, including referring to him as "a snitch" and "a fake Muslim" and berating him for being "a son who doesn't love his own father" and telling him "people like this go to hell." Mother testified as to the stress, anxiety, depression, and disturbance the child felt as a result of the abusive language Father directed at him. According to Mother, the treatment sessions are not to "denigrat[e] . . . what Father is saying" but instead to discuss what skills and strategies the child can learn to cope with what

Father says to him. Mother testified Dr. Estrada's opinion is that the child's source of anxiety and difficulties are due to Father's behavior.

At the conclusion of the trial, the judge denied Father's motion to modify and stated his visitation would "begin back at step one." On October 30, 2023, the judge signed an order, which included the following findings:

- "[T]he father has continued to display and engage in verbally and emotionally abusive behavior towards the mother and Child[.]"

- "Giving the father overnight visitation at this time is not in the child's best interests."

- "Giving the father a stair stepped visitation schedule is not in the child's best interests."

- "Should father continue to engage in verbally and emotionally abusive behavior towards the mother or child in the future, father's possession could be reduced further."

The 2023 order found the material allegations in Mother's counterpetition to modify to be true and her requested modification to be in the best interest of the child, granted her counterpetition to modify, and denied Father's request for a standard possession order. The 2023 order also set forth Father's possession of the child as five hours on the first and third Saturdays of each month.

Father requested findings of fact and conclusions of law and filed a motion for new trial. The trial court signed findings of facts and conclusions of law and later denied the motion for new trial. This appeal followed.

–7–

**DISCUSSION**

## I. No Harmless Error in Admitting Dr. Estrada's Treatment Summary and Business Records Affidavit

In five issues, Father complains about the trial court's admission of Dr. Estrada's treatment summary and the business records affidavit authenticating it.[2] Father urges the treatment summary was hearsay and unreliable because Mother failed to introduce evidence of Dr. Estrada's qualifications. He further argues that the admission of the treatment summary and the business records affidavit authenticating it was harmful error because it was the sole evidence the trial court relied upon for finding Father's testimony to be not credible, its findings that Father's testimony was contradicted, and its findings that there were no substantial and material change of circumstances based on Father's petition to modify, that Mother's allegations were true, and that Father engaged in behavior and conduct that is emotionally and verbally abusive.

---

[2] Father's first five issues are as follows:

1. The trial court abused its discretion in denying [Father's] petition to modify conservatorship and in granting [Mother's] counter-petition to modify conservatorship, because its decision was based entirely on inadmissible and incompetent evidence.

2. The trial court abused its discretion in admitting a therapist's affidavit as evidence at trial because it was hearsay.

3. The trial court abused its discretion in admitting a therapist's affidavit as evidence at trial because a being a rebuttal witness does not excuse a party's untimely disclosure where, as here, [Mother] clearly anticipated needing the therapist's testimony.

4. The trial court abused its discretion in admitting a therapist's affidavit as evidence at trial because it was rendered unreliable by the lack of evidence of the therapist's credentials.

5. The trial court's abuse of discretion in admitting a therapist's affidavit as evidence at trial was harmful error because it was the sole evidence supporting the trial court's findings of fact and judgment.

–8–

We review a trial court's rulings on the admissibility of evidence for an abuse of discretion, including rulings on the reliability of expert testimony. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015) (citing *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex. 2009); *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 727 (Tex. 1998)). However, even if we were to conclude the trial court abused its discretion by admitting Dr. Estrada's treatment summary and the business records affidavit authenticating it, we may only reverse if we conclude the error complained of probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* Tex. R. App. P. 44.1(a); *see, e.g.*, *KMS Retail Rowlett, LP v. City of Rowlett*, 559 S.W.3d 192, 197 (Tex. App.—Dallas 2017), *aff'd*, 593 S.W.3d 175 (Tex. 2019).

We review a trial judge's decision on a petition to modify under an abuse-of-discretion standard. *In re S.N.Z.*, 421 S.W.3d 899, 908 (Tex. App.—Dallas 2014, pet. denied) (citing *In re W.C.B.*, 337 S.W.3d 510, 513 (Tex. App.—Dallas 2011, no pet.); *In re S.E.K.*, 294 S.W.3d 926, 930 (Tex. App.—Dallas 2009, pet. denied)). Under this standard, we look to whether the trial judge acted unreasonably; that is, did the trial judge act in an arbitrary manner or without reference to any guiding rules or principles. *See id.* (citing *In re W.C.B.,* 337 S.W.3d at 513). The abuse-of-discretion standard of review overlaps with traditional sufficiency standards of review in family law cases. *See id.* (citing *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.)). As a result, legal and factual insufficiency challenges

are not independent grounds for reversal, but instead constitute factors relevant to our assessment of whether the trial judge abused his discretion. *See id.* (citing *In re A.B.P.*, 291 S.W.3d at 95); *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.— Dallas 2005, pet. denied)). In determining whether a trial judge abused his discretion because the evidence is insufficient to support the decision, we first look to whether the judge had sufficient evidence upon which to exercise his discretion and then look to whether the judge erred in his application of that discretion. *Id.* (citing *Moroch*, 174 S.W.3d at 857). Our inquiry under the second question is based on the elicited evidence; we ask whether the trial judge made a reasonable decision. *Id.* (citing *Moroch*, 174 S.W.3d at 857)).

In a legal sufficiency review, we consider the evidence in the light most favorable to the court's order and indulge every reasonable inference that supports it. *See In re S.N.Z.*, 421 S.W.3d at 908 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005); *In re S.E.K.*, 294 S.W.3d at 930). A trial judge does not abuse his discretion if some evidence of a substantial and probative character exists to support the decision. *Id.* (citng *In re S.E.K.*, 294 S.W.3d at 930). In a factual sufficiency review, we consider all the evidence supporting and contradicting the fact-finder's finding. *Id.* (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)). The evidence is factually insufficient if the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* at 908–09 (citing *Dow Chem.*, 46 S.W.3d at 242). The trial court is

–10–

in the best position to observe the witnesses and their demeanor and, therefore, is given great latitude when determining the best interests of the child. *Id.* at 909 (citing *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.); *see also In re R.D.Y.*, 51 S.W.3d 314, 321 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (because trial court is in best position to observe credibility and personalities of witnesses, there is no abuse of discretion when court bases its decision on conflicting evidence)).

Because both parents were seeking a modification of the 2020 order where Father sought a standard possession order and Mother sought to return Father's possession to "step one" of the 2020 order's stair-stepped schedule, each bore the burden to establish the requirements of section 156.101 of the family code. *See* TEX. FAM. CODE § 156.101(a)(1)(A). Specifically, each had to show that modification would be in the best interest of S.M.Q. and "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed" since date of rendition of prior order. *See In re S.N.Z.*, 421 S.W.3d at 909 (quoting FAM. § 156.101(a)(1)(A)). This means that for Father to succeed on his request for standard visitation, he had to come forward with evidence concerning S.M.Q.'s best interest that has developed since the prior conservatorship order. Similarly, Mother had to come forward with evidence to support her request that Father's possession schedule be reduced to that of "step one" of the 2020 order. If either failed to show a material and substantial change in circumstances, his or her

–11–

petition to modify must be denied. *Id.* (citations omitted); *see also Ogletree v. Crates*, 363 S.W.2d 431, 436 (Tex. 1963) ("[I]n the absence of materially changed conditions, the disturbing influence of constant re-litigation should be discouraged.").

"Material changes may include (1) remarriage by a party, (2) poisoning of the child's mind by a party, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, and (5) a parent's becoming an improper person to exercise custody." *In re S.N.Z.*, 421 S.W.3d at 909 (citing *In re A.L.E.*, 279 S.W.3d 424, 428–29 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). In addition, "a course of conduct pursued by a managing conservator that hampers a child's opportunity to favorably associate with the other parent may suffice as grounds for redesignating managing conservators." *Id.* at 909–10 (quoting *Arredondo v. Betancourt*, 383 S.W.3d 730, 735 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). In deciding whether circumstances have materially and substantially changed, the trial judge is not confined to rigid or definite guidelines. *Id.* at 910 (citing *In re A.L.E.*, 279 S.W.3d at 428). Rather, the determination depends on the facts of the case and must be made according to the circumstances as they arise. *Id.* (citing *In re A.L.E.*, 279 S.W.3d at 428).

In determining the best interest of a child, a court may consider, among other things, the desires of the child; the child's current and future emotional and physical needs; any emotional or physical danger to the child; the parental abilities of the

–12–

individual seeking custody and her plans for the child; the stability of the home; acts or omissions by a parent tending to show the existing relationship is not a proper one; and any excuse for the acts or omissions of the parent. *In re S.N.Z.*, 421 S.W.3d at 910 (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing factors used for determining best interest of the child)). The focus of the analysis is on the best interest of the child, not the best interest of the parent. *Id.* (citing FAM. §§ 156.101(a); 153.002).

At trial, Father attempted to show that his relationship with the child had changed and improved for the better and that he had become a better parent and father since the 2020 order was entered, while Mother attempted to show that Father had not improved his parenting and that his interactions with the child had worsened and had continued to present an emotional danger to the child. Father argues that without Dr. Estrada's treatment summary, Mother cannot point to any evidence to contradict his own testimony, urging that her testimony was based on Dr. Estrada's treatment summary and that she had no personal knowledge of the behavior Dr. Estrada accused Father of. We disagree.

While Mother's testimony on direct generally confirmed the content of Dr. Estrada's treatment summary report, on cross-examination, she testified as to Father's worsened behavior and the negative impact it had had on their child. Indeed, Father did not object to Mother's testimony as hearsay or otherwise lacking in personal knowledge. Moreover, Mother testified as to the stress, anxiety,

depression, and disturbance the child felt as a result of the abusive language Father directed at him. When questioned whether Dr. Estrada had told her that Father was the cause of S.M.Q.'s anxiety, Mother testified:

> I am trying to answer your question to the best of my ability. Dr. Estrada doesn't have to say what my son is telling her or is being troubled with. I know my son's mental state. He's being troubled. I am taking him to therapy because the Court ordered. Yes, we do discuss this.

Additionally, the trial judge was in the best position to judge the credibility of Father and Mother and thus conclude he was not credible and that Mother was. *See In re S.N.Z.*, 421 S.W.3d at 909.

We conclude that, even assuming the summary treatment was improperly admitted, the record contains legally and factually sufficient evidence that it was in the child's best interest to deny Father's request for an increase in his possession and to grant Mother's request for decreased possession by Father such that the trial court did not abuse its discretion by denying Father's motion to modify and granting Mother's motion to modify.

We overrule Father's first five issues regarding whether the admission of the treatment summary and supporting affidavit was harmful error.

## II. No Conflict between Order and Findings of Fact and Conclusions of Law

In his sixth issue, Father complains that the trial judge's order conflicts with certain of the trial judge's findings of fact. More particularly, Father urges that the trial court's oral pronouncement of judgment and its finding of fact number 22

–14–

"make clear that the court intended to 'reset Father's possession and access to Step 1 under the June 17, 2020 Modification Order.'" He argues that the appealed order omits steps two and three and any time limitation of step one such that it conflicts with what the trial court intended.

At the conclusion of the trial, the judge orally pronounced, "Based on the testimony presented today, the motion to modify is denied. Based on the evidence presented, the father's visitation will begin back at step one." To the extent that pronouncement could be read to conflict with the trial court's order, the trial court's written order in a civil case prevails over a conflicting oral pronouncement. *See, e.g.*, *In re M.I.W.*, No. 04-17-00207-CV, 2018 WL 1831678, at *3 (Tex. App.—San Antonio Apr. 18, 2018, no pet.) (mem. op.) (citing *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 684 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)); *see also In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 914 n.3 (Tex. App.—Dallas 2006, no pet.) (citing *Murray v. Murray*, 350 S.W.2d 593, 597 (Tex. App.—Dallas 1961, no writ); *Gasperson v. Madill Nat'l Bank*, 455 S.W.2d 381, 387 (Tex. App.—Fort Worth 1970, pet. ref'd n.r.e.)).

As for the trial court's finding number 22, we disagree that any conflict exists between that finding and the order. In that finding, the trial court stated it "reset Father's possession and access to Step 1 under the June 17, 2020 Modification Order," and we conclude such language does not conflict with its order limiting Father's possession indefinitely to the schedule set forth in step one of the 2020

–15–

order. Nothing in the findings of fact or conclusions of law indicates any intention that Father's possession would increase any more than the schedule set forth in step one. In fact, finding of fact number 22 concludes that Father would have possession of the child on the first and third Saturdays of each month but includes no time period for that schedule end in contrast with finding number 6, which reiterates the possession schedule set forth in the 2020 order that includes that the first step would continue for three months at which time the schedule would change to step two for six months before changing to step three.

We overrule Father's sixth issue.

## CONCLUSION

We affirm the trial court's October 30, 2023 Order in Suit to Modify Parent–Child Relationship.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

240024F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.M.Q., A CHILD

No. 05-24-00024-CV

On Appeal from the 303rd Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-17-16989. Opinion delivered by Justice Kennedy. Justices Molberg and Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee UZMA TANVEER recover her costs of this appeal from appellant SYED QUADRI.

Judgment entered this 12th day of November 2024.